IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASALLE TECHNOLOGY INC., CHICAGO INVESTMENT GROUP, LLC, and PATRICK CARROLL, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> BERNARD RICE, an individual, MM SQUARED, LLC, a Delaware corporation, ABN AMRO, INC., a New York corporation, WEISS & BLOCK, CHTD., an Illinois corporation, SCHULTZ & CHEZ, an Illinois limited liability partnership, JOSE LABOY, an individual, PAUL WELLMAN, an individual, NANCY STAFFORD, an individual, AND SHELDON COHEN, an individual, <br><br> Defendants, <br><br> and <br><br> ABN AMRO SAGE CORPORATION, a Delaware corporation, <br><br> Respondent in Discovery/Defendant. | Case No. 04 C 2043 <br><br> Hon. Joan B. Gottschall <br> United States District Judge <br><br> Hon. Sidney I. Schenkier <br> United States Magistrate Judge |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND FOR ABSTENTION

Defendants[1] explained in their opening brief that Plaintiffs' federal securities claims should be dismissed for five reasons: (1) Plaintiffs fail to allege that their claims involve a "security"; (2) Plaintiffs fail to allege that they purchased "securities"; (3) Plaintiffs fail to allege that Defendants made any misstatements with scienter; (4) Plaintiffs fail to allege that they

---

[1] This Reply is filed on behalf of all Defendants except Weis & Block, Chtd., ABN AMRO, Inc., and ABN AMRO Sage Corporation.

1



justifiably relied on any alleged misstatements by Defendants; and (5) Plaintiffs fail to allege loss causation. (Defs.' Mem. at pp. 2-3, and 8-18) Defendants also explained that regardless of the outcome of their motion to dismiss, the circumstances of this case—and specifically the egregious forum shopping that has occurred—warrant abstention and the return of this purely state law case to Plaintiffs' original choice of forum—the Illinois state court. (Defs.' Mem. at pp. 21-25)

In response to these straightforward legal arguments, Plaintiffs resort to blurring the statements of various Defendants, confusing the agreements and events that occurred, and accusing Defendants of creating "a negative spin" and "clouding the real issues." (Pls.' Resp. at 2-3) But the facts are the facts. Plaintiffs caused the parties to litigate this case in two separate forums only after receiving adverse rulings in the state court. Plaintiffs have slapped together a belated federal securities claim that omits *any* allegations regarding most of the Defendants in this case. Plaintiff Chicago Investment Group, LLC ("CIG") is pressing forward with a federal securities claim even though it is not a party to any agreement at issue in this case. Simply put, this case does not belong in federal court.

Indeed, the facts alleged in Plaintiffs' Complaint clearly show that:

- LaSalle Technology Inc. ("LTI") is purporting to base a federal securities claim on an intent to purchase all of the interests of $MM^2$, a limited liability company. (Compl., ¶ 5) Interests in limited liability companies are not stock. Moreover, the limited liability interests that LTI and Patrick Carroll ("Carroll") wanted to buy from Bernard Rice ("Rice") are not "investment contracts" because neither LTI nor Carroll were passive investors relying solely on the efforts of others. In sum, there are no "securities" at issue in this case.

- LTI concedes that the February 28, 2003 Purchase Agreement between Rice and LTI never closed. (Compl., ¶ 56) Carroll also concedes that the January 13, 2004 Letter of Intent between Carroll and Rice never closed. (Compl., ¶ 41; Pls.' Resp. at pp. 16 & 20) These two facts preclude any federal securities claim. Section 10b and Rule 10b-5 prohibit fraud only in connection with the "actual purchase and sale of securities." No actual purchase or sale of securities occurred.

2

- Plaintiffs fail to allege any "specific facts" to show that Defendants made misstatements with scienter. For its part, CIG fails to allege any facts whatsoever regarding any specific Defendant other than where they live. For their part, LTI and Carroll fail to allege specific facts to show that Schultz & Chez, Jose Laboy, Paul Wellman, Nancy Stafford, and Sheldon Cohen made any misstatements at all. Finally, LTI and Carroll fail to allege "specific facts" that give rise to a "strong inference" that Rice and $MM^2$ acted with an intent to defraud or recklessness so egregious as to amount to an intent to defraud.

- Plaintiffs' Complaint alleges that Rice and $MM^2$ made four misstatements about: (1) Rice's ownership of $MM^2$; (2) Rice's control of $MM^2$'s business operations, (3) $MM^2$'s involvement in arbitration; and (4) the financial condition of $MM^2$. (Compl., ¶¶ 51-54) But Plaintiffs concede that they became aware of the "truth" surrounding each of these facts on or before February 28, 2003, and, more specifically, that they chose to continue with the deal despite knowing these facts and the risks involved. (Compl., ¶¶ 51-54, & 56) Because Plaintiffs could not have reasonably relied on the alleged misstatements made by Rice and $MM^2$, Plaintiffs' federal securities claims must fail as a matter of law.

- LTI and Carroll allege only the purported misstatements that caused them to enter into the Purchase Agreement and Letter of Intent, but fail to allege which of these purported misstatements made by Rice caused them to suffer any cognizable loss. Having failed to allege loss causation, Plaintiffs' federal securities claim must be dismissed.

- LTI and CIG commenced this litigation on July 18, 2003 in the Illinois state court seeking immediate injunctive relief. After a four-day hearing, the Circuit Court denied a vast majority of the relief sought by LTI and CIG. Seven months later, LTI and CIG tried to remove this case to federal court based on Defendants' counterclaims. That attempt failed. LTI and CIG then filed this federal Complaint, raising the same purely state law issues they raised in the Illinois court. Next, they voluntarily dismissed their claims in the Illinois court, only to assert those same claims here. The state law issues that predominate in this case, coupled with the circumstances, timing, and baseless nature of Plaintiffs' federal securities claims, demonstrate that this Court should abstain from exercising jurisdiction over this case.

Accordingly, this Court should grant Defendants' motion to dismiss in its entirety and return this case to the Illinois state court.

3

## ARGUMENT

### A. Plaintiffs Fail To Allege A Securities Fraud Claim Against Defendants.

#### 1. Plaintiffs fail to allege that their claims involve a security.

LTI and Carroll concede three critical facts. First, this case involves membership interests in $MM^2$, an Illinois limited liability company. (Compl., Ex. A) Second, LTI and Carroll sought to purchase controlling interests in $MM^2$. (Pls.' Resp. at pp. 5, and 12; Compl., Ex A.; Compl., Ex. C, ¶¶ 1, 3, & 6) Third, if the deal with LTI or Carroll had closed (which neither did), LTI or Carroll would have obtained control over the operations of $MM^2$. (Compl., Ex. A; Compl., Ex. C, ¶¶ 1, 3, & 6) These facts doom LTI's and Carroll's federal securities claims against Rice and $MM^2$.

##### (a) The interests of $MM^2$ are not like stock or other "traditional securities."

Plaintiffs fail to cite a single case in support of their argument that "$MM^2$ interests are 'traditional securities' (any interest or instrument commonly known as a security) as defined by the Act." They also fail to explain what factors determine if an instrument is "commonly known as a security" and how those factors apply here. Courts addressing the issue make one thing clear (a point evidently missed by Plaintiffs)—the "substance" or the "economic realities" of the transaction matter. *See United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 851-52 (1975).

Consequently, LTI's general statements that the agreement between LTI and Rice was labeled a "stock purchase agreement" and that two of its provisions required the parties to comply with the federal securities laws make no difference. *Id.* Carroll himself offers no explanation as to why $MM^2$'s interests are "traditional securities." Nor could he.

Plaintiffs' further attempt to argue that the interests in $MM^2$ are "any interest or instrument commonly known as a security," but that Plaintiffs need not pass the test articulated

4

in *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946), is baffling. The Supreme Court has held that the term "any interest or instrument commonly known as a security" covers the same financial instruments as those included in the term "investment contract." *See United Hous. Found., Inc.*, 421 U.S. at 852 ("We perceive no distinction, for present purposes, between an 'investment contract' and an 'instrument commonly known as a security.'"). Numerous courts have correctly held that the *Howey* test embodies the essential attributes common to all of the decisions defining a "security" and have consistently declined to take the road Plaintiffs urge here. *See, e.g., Great Lakes Chem. Corp. v. Monsanto Co.*, 96 F. Supp. 2d 376, 393-94 (D. Del. 2000) (citing cases). This Court should do the same.

### (b) As a matter of law, the interests in $MM^2$ that LTI and Carroll sought to purchase are not "investment contracts."

As Defendants explained in their opening memorandum (Defs.' Mem. at pp. 10-11), the principal inquiry in the LLC context is whether the alleged purchaser expected profits "to come solely from the efforts of others." Plaintiffs do not dispute this. In fact, LTI concedes that it "was acquiring the ownership interests in $MM^2$ in its entirety, *rather than making an investment in $MM^2$ and expecting a profit from that investment*." (Pls.' Resp. at p. 12) (emphasis added) Regardless, LTI and Carroll claim that because they intended to "hire" or "employ" Rice and allow Rice to perform various managerial functions, the interests of $MM^2$ are "investment contracts" as defined by *Howey*. (Pls.' Resp. at pp. 13-14)

Plaintiffs' understanding of *Howey* is wrong for several reasons. First, "[t]he delegation of rights and duties standing alone does not give rise to the sort of dependence on others which underlies the third prong of the *Howey* test." *See Nelson v. Stahl*, 173 F. Supp. 2d 153, 165 (S.D.N.Y. 2001) (quoting *Williamson v. Tucker*, 645 F.2d 404, 424 (5th Cir. 1981)). "So long as the member 'retains ultimate control, he has the power over the investment and the access to

5

information about it which is necessary to protect against any unwilling dependence on the manager." *Id.*

Second, consistent with settled law in the partnership and limited partnership context, the terms of the operating agreement decide the issue. *See Great Lakes Chem. Corp.*, 96 F. Supp. 2d at 391-92; *Nelson*, 173 F. Supp. 2d at 165; *Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 333 (S.D.N.Y. 1999). Here, under the terms of the Purchase Agreement and the Letter of Intent, both LTI and Carroll sought to purchase controlling interests of $MM^2$ from Rice. (Compl., Ex. A; Compl., Ex. C, ¶¶ 1, 3, & 6) This would have provided LTI or Carroll with substantial powers to directly affect the profits received from $MM^2$. Indeed, just like Rice, LTI or Carroll would have controlled $MM^2$'s affairs and had complete discretion to distribute property, appoint and remove the manager, and run each and every aspect of $MM^2$'s operations. These substantial legal rights, coupled with their ability to exercise them, show that Plaintiffs' did not seek to purchase "securities" and that their federal securities claims should be dismissed.

### 2. Plaintiffs have no standing because they never purchased securities from Rice or $MM^2$.

In their Complaint, Plaintiffs concede that the February 23, 2003 Purchase Agreement between LTI and Rice, as well as the January 3, 2003 Letter of Intent between Carroll and Rice, never closed.[2] (Compl., ¶¶ 56; 35, 39-42 & Ex. C) This defect is fatal and requires the

---

[2] In their Response, Plaintiffs contend that it is "simply untrue" that Rice and Carroll scheduled a closing for February 28, 2003 and that this information is nowhere contained in the citations to the record provided by Defendants. (Pls.' Resp. at p. 5 n.2) In making this claim, Plaintiffs distort both the record and Defendants' citations. On Page 5 of their Memorandum, Defendants directed this Court to Paragraphs 35, and 39-42 of Plaintiffs' Complaint and Exhibit C to the Complaint. The first paragraph of Exhibit C defines February 28, 2003 as the "Closing Date." (Compl., Ex. C) In their Response, Plaintiffs also misquote Defendants' Memorandum with respect to the consideration Carroll was to receive for his assignment of $MM^2$ interests. (Pls.' Resp. at p. 5 n.2) In page 5 of their Response, Defendants accurately cited to Paragraph 41 of the Complaint which states that "Rice assured Carroll *that once* the stock purchase took place, Carroll would receive the consideration...." (Compl., ¶ 41) (emphasis added)

dismissal of Plaintiffs' claims.[3] *See, e.g., Northland Capital Corp. v. Silver*, 735 F.2d 1421, 1431 (D.C. Cir. 1984).

Plaintiffs' argument of last resort that the doctrine of "promissory fraud" excuses them from pleading elements of their federal securities claims is simply indefensible. (Pls.' Resp. at pp. 14-16) Under Plaintiffs' theory, Defendants are estopped from claiming that there was no closing. (Pls.' Resp. at p. 14) Yet, Plaintiffs admit throughout their Complaint and Response that the transactions at issue never closed. (Compl., ¶¶ 41 & 56; Pls.' Resp. at pp. 16 & 20) In light of its incredible nature, it is no surprise that Plaintiffs fail to cite to a single case in support of this novel estoppel argument.

The authorities discussing promissory fraud to which Plaintiffs do cite, however, firmly support Defendants' position. In *Metropolitan Bank & Trust Co. v. Oliver*, the case upon which Plaintiffs primarily rely, the court held that a statement "which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation. 283 N.E.2d 62, 64 (Ill. App. Ct. 1972). The *Oliver* court further held that a "party is not justified in relying on representations when it has ample opportunity to ascertain the truth of the representations. *Id.* at 65.

Here, Plaintiffs "have maintained in their complaint that part of the ultimate fraud included Defendants' false promises of the intent to procure the requested loan documents so that the deal could close." (Pls.' Resp. at p. 15) As the *Oliver* court recognized, however, promises of future conduct, such as Defendants' alleged "promises to procure the requested loan documents," are not actionable representations. *Oliver*, 283 N.E.2d at 64. This is especially true

---

[3] The fact that LTI may have purchased interests in $MM^2$ from LaBoy, Wellman, and Stafford is not relevant to this Court's decision. LTI received what it paid for and it fails to allege that LaBoy, Wellman, and Stafford made any misstatements in connection with the sale of those interests or that any alleged misstatements made by LaBoy, Wellman, and Stafford caused LTI to suffer any loss.

7

in cases, such as the one here, where the complaining party had "ample opportunity to ascertain the truth of the representations." *Id.* at 65.

### 3. Plaintiffs fail to allege that any purported misstatements made by Defendants were made with scienter.

Plaintiffs concede that to state a claim under Rule 10b-5, they were required to allege, with particularity, "facts" that raise a "strong inference" that Defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2). Moreover, under the Reform Act, a plaintiff's claim must be dismissed unless fraud is the "most plausible of competing inferences." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001); *In re Shopko Sec. Litig.*, No. 01 C 1034, 2002 WL 32003318, at *6 (E.D. Wis. Nov. 5, 2002).

Here, fraud is *not* the "most plausible inference" based on the specific facts alleged by Plaintiffs. The only alleged misstatements made by Rice or $MM^2$ are that: (1) Rice owned 100% of $MM^2$; (2) $MM^2$ was not involved in litigation with Investec; (3) Investec had no role in $MM^2$'s operations; and (4) $MM^2$ was performing better than it was. (Compl., ¶¶ 51- 54) LTI alleges these "facts"; Carroll himself raises none. But even assuming these misstatements were made, and that they were material when they were made,[4] fraud cannot be the most plausible inference based on Rice's full disclosure to LTI prior to the closing and Rice's efforts to cooperate with LTI and move forward with the deal. As explained in Defendants' opening memorandum (*see* Defs.' Mem. at pp. 14-15), if Rice intended to defraud LTI, he would have waited until after the deal had closed before revealing these facts or, even more likely, not revealed them at all. Instead, prior to the scheduled close of the transaction, Rice's attorneys provided LTI with an

---

[4] Both assumptions require giant leaps. They are inconsistent with the terms of the agreements at issue in this case. (*See* Defs.' Mem. at p. 14, nn.12-14)

Amended Agreement disclosing the "truth" behind the alleged "misrepresentations." (Compl., ¶¶ 51-54) LTI's fraud theory fails the test of common sense.

LTI's "intricate involvement" theory fares no better. In the Response, and for the first time, LTI claims that Schultz & Chez and Cohen committed fraud "in the preparation of financial documents containing blatantly false and fraudulent statements...." (Pls.' Resp. at p. 17) That is not what is alleged in the Complaint. The only allegations that specifically relate to Cohen refer to his Illinois residency, his position with $MM^2$, and his purported desire to purchase Carroll's 15% interest in $MM^2$. (Compl., ¶¶ 14, 77, & 144) For its part, there are only three references to Schulz & Chez in the Complaint, one of which is contained in a footnote.[5] (Compl., ¶¶ 10 & 148; Compl., p. 21 n.5) In any event, these allegations are deficient because they lack the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

At bottom, the totality of the facts and circumstances, as alleged in Plaintiffs' Complaint, make clear that fraud is not the most plausible inference in this case. Rather, the failure of the LTI deal, and Carroll's alleged inability to reap substantial profits from his alleged assignment to LTI, merely reflect that pre-closing disputes among the parties prevented them from closing their business deal.

4. **Plaintiffs fail to allege that they reasonably relied on any purported misstatements by Rice or $MM^2$.**

Plaintiffs did not (nor could they) have reasonably relied on any of the alleged misstatements made by Rice or $MM^2$. The analysis is straightforward.

---

[5] Significantly, the sole misstatement of which Plaintiffs specifically claim Schulz & Chez was aware is contained in the footnote referencing co-defendant's Weis & Block, Chtd.'s retainer. (Compl., p. 21 n.5) Even assuming the Court attributes this misstatement to Schulz & Chez, this allegation is deficient because it alleges no specific facts to show that the misstatement was made with scienter, that it was material, or that LTI reasonably relied on it. In this regard, Plaintiffs fail to explain how a reasonable investor could justifiably rely on, rather than be deterred by, an *overstatement* of liabilities.

First, the integration clause in the Purchase Agreement forecloses LTI from relying on any oral statements not expressly included in the agreement. *See Donovan v. ABC-Naco Inc.*, No. 02 C 1951, 2002 WL 1553259, at *6 (N.D. Ill. July 15, 2002). The Purchase Agreement explicitly states that it "constitutes the full and entire understanding and agreement between the parties with respect to the subject matter hereof." (Compl., Ex. A § 5.1) Thus, any prior oral representations or assurances, even assuming they were made, are not actionable as a matter of law.

Second, justifiable reliance is measured at the time of the transaction at issue "by all of the facts that the party knew, in addition to those facts that the party could have discovered through ordinary prudence." *See Tirapelli v. Advanced Equities, Inc.*, 215 F. Supp. 2d 964, 971 (N.D. Ill. 2002). Under this test, Plaintiffs' claims fail regardless of the time period selected. LTI could not have reasonably relied on any alleged misstatements made by Rice prior to February 28, 2003. The Purchase Agreement expressly states that any representations made by Rice in the agreement had to be "true and correct" as of February 28, 2003. (Compl., Ex. A § 3.4(f). Furthermore, the Purchase Agreement expressly required LTI to verify $MM^2$'s financial statements and information prior to the closing. (Compl., Ex. A. § 2.1) These facts are included in the Purchase Agreement itself.

Nor can Carroll claim that he reasonably relied on any of Rice's alleged misstatements prior to February 28, 2003. Carroll was in the midst of deal with Rice dependent on a host of unknowns and Carroll was aware that Rice was "shopping" $MM^2$ before the assignment to LTI. (Compl., ¶ 39) Further, Plaintiffs cannot rely on any of Rice's alleged misstatements after February 28, 2003. Plaintiffs concede that the "truth" surrounding each and every alleged misstatement was known or should have been known to them as of this date. (Compl., ¶¶ 51-54)

10

Plaintiffs' decision to proceed with steps toward the closing in the face of these facts clearly demonstrate that their alleged reliance on the alleged misstatements was unreasonable.

LTI's and Carroll's vague claims of various "assurances" made by Rice are easily discounted. For starters, Plaintiffs' Complaint contains no factual allegations about Rice's purported "assurances" or when they were made. Moreover, any reliance by LTI or Carroll was clearly unreasonable in light of the allegations raised in Plaintiffs' own Complaint: they both knew Rice was "shopping" $MM^2$ and that various pre-closing disputes jeopardized the deal. The fact that LTI or Carroll spent thousands in anticipation of a potential million dollar deal is irrelevant in this case.[6] None of Plaintiffs' expenses was incurred in reasonable reliance upon anything said or done by Rice, for the reasons explained above and in Defendants' opening brief.

### 5. Plaintiffs have failed to allege loss causation.

Plaintiffs fail to allege how their purported interests in $MM^2$ declined in value due to any alleged misstatements made by Rice or $MM^2$. They cannot. Therefore, Plaintiffs' federal securities claims should be dismissed. *See Bastian v. Petren Res. Corp.*, 892 F.2d 680, 684-85 (7[th] Cir. 1990); *Gigliotti v. Mathys*, 129 F. Supp. 2d 817, 824 (D.V.I. 2001).

As Defendants established in their opening memorandum (Defs.' Mem. at pp. 17-18), a plaintiff in a private securities fraud action must allege that the defendant's alleged misstatements were the actual cause of the investment losing its value. In their Response, Plaintiffs claim that they adequately demonstrated loss causation. (Pls.' Resp. at p. 21) In support, Plaintiffs cite to paragraphs 34, 45-46, and 101-106 of their Complaint. (Pls.' Resp. at p. 21) These paragraphs of the Complaint, however, do not allege any facts that tie Rice's

---

[6] Plaintiffs' statement in their Response that Carroll paid $150,000 in reliance on the January 2003 letter of intent is wrong and contradicts the allegations in their own Complaint. (Pls.' Resp. at p. 20) Carroll paid $150,000 in August 2002 when he decided to invest in $MM^2$. (Compl., ¶ 34)

alleged misstatements to Plaintiffs' losses and, therefore, the allegations in these paragraphs of the Complaint do not, and cannot, establish loss causation.

B.  **Plaintiffs' Claims Under The Illinois Securities Act, Common Law Fraud, And The Illinois Consumer Fraud Act Should All Be Dismissed.**

The defects in Plaintiffs' federal securities claims are similarly fatal to their claims under the Illinois Securities Act, common law fraud, and the Illinois Consumer Fraud Act. Plaintiffs have failed to allege "specific facts" to establish that each of the Defendants made misstatements and acted with the intent to deceive or defraud; or that each of the Plaintiffs reasonably relied on those misstatements and that those misstatements caused each of the Plaintiffs to suffer any loss. Accordingly, these claims should be dismissed.[7]

C.  **Plaintiffs' Claim For Negligent Misrepresentation Is Barred By The *Moorman* Doctrine.**

Plaintiffs tacitly concede that they seek only to recover purely "economic loss" under their negligent misrepresentation claims. (Pls.' Resp. at pp. 21-22) Because the negligent misrepresentation exception to the *Moorman* doctrine's economic loss rule applies only where "the defendant is in the business of supplying information for the guidance of others," Plaintiffs' claims must fail. *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997). Indeed, none of the Defendants, with the possible exception of Schultz and Chez, were in "the business of supplying information for the guidance of others."[8]

---

[7] *See Branch-Hess Vending Serv. Emp. Pen. Tr. v. Guebert*, 751 F. Supp. 1333, 1342 (C.D. Ill. 1990) (essential elements of a claim brought under the Illinois Securities Act parallel those for a Section 10b and Rule 10b-5 claim); *Israel v. Nat'l Canada Corp.*, 628 N.E.2d 1184, 1193 (Ill. App. Ct. 1995) (listing elements to state a claim for common law fraud); *Adler v. William Blair & Co.*, 648 N.E.2d 226, 234 (Ill. App. Ct. 1995) (plaintiff must allege that the untruth was the proximate cause of his loss to state a claim under the Illinois Consumer Fraud Act).

[8] Plaintiffs' allegations with respect to Schultz & Chez are deficient for the reasons previously cited in this Reply (see p. 9 and n.5, supra).

Plaintiffs' reliance on the authority of *Continental Leavitt Communications, Ltd. v. PaineWebber, Inc.* with respect to Plaintiffs' "pecuniary interest" argument is, therefore, misplaced. (Pls.' Resp. at 21-22). *See Cordiant MN, Inc. v. David Cravit & Assocs.*, No. 96 C 4276, 1997 WL 534308, at *15 (N.D. Ill. Aug. 19, 1997). Since, as Plaintiffs concede, Rice and $MM^2$ supplied information to LTI and Carroll in connection with a potential sale of $MM^2$ interests, Plaintiffs' negligent misrepresentation claim is barred by the *Moorman* Doctrine. *See Cordiant MN, Inc.*, 1997 WL 534308, at *15 (granting defendant's motion to dismiss negligent misrepresentation claim as barred by the *Moorman* Doctrine where defendant supplied information in connection with the sale of certain assets of its business).

Plaintiffs' negligent misrepresentation claims also fail because Plaintiffs fail to allege any misstatements made by Laboy, Wellman, Stafford, Cohen, Schultz & Chez, Rice, and $MM^2$. Furthermore, Plaintiffs fail to plead reasonable reliance and loss causation, as explained above (see *supra* pp. 9-12).

### D. Plaintiffs' Claim For Constructive Trust Fails As A Matter of Law.

Plaintiffs' "constructive trust" claim against Rice must be dismissed because no such cause of action exists. *See 3Com Corp. v. Elec. Recovery Specialists, Inc.*, 104 F. Supp. 2d 932, 942 (N.D. Ill. 2000). Plaintiffs concede this point by not even addressing this issue in their Response.

### E. This Court Should Abstain From Exercising Jurisdiction.

Defendants explained in their opening memorandum (Defs.' Mem. at pp. 21-25) that in the event this Court dismisses Plaintiffs' federal securities claims, this Court should abstain from retaining jurisdiction over the remainder of Plaintiffs' purely state law claims under 28 U.S.C. § 1367(c)(3). Judicial economy, convenience, fairness, and comity all favor this result. Plaintiffs fail to present any convincing argument to the contrary.

Moreover, abstention is (and remains) proper under the *Colorado River* doctrine. Plaintiffs' strategy of dismissing their claims in the Illinois case reeks of forum shopping and provides another example of Plaintiffs' tactics in this case. But such tactics clearly fail to bind Plaintiffs' purely state law issues to the federal courts. The Illinois case is alive and well and Plaintiffs remain parties to the suit. The two cases remain parallel. *LaDuke v. Burlington N. R.R.*, 879 F.2d 1556, 1558 (7th Cir. 1989) (cases parallel where "substantially the same parties are litigating substantially the same issues").

The history of this case, coupled with Plaintiffs' endless display of procedural gamesmanship, also favors abstention. In addition, as explained more fully in Defendants' opening memorandum (Defs.' Mem. at pp. 24-25), the avoidance of piecemeal litigation and the timing and nature of Plaintiffs' federal claims unmistakably point this case in the direction of the Illinois state court. The lack of specificity in the Complaint, the failure to plead entire elements of their claims, and the blur and confusion presented in the Complaint speak volumes as to the lack of merit of Plaintiffs' federal securities and fraud claims. This case belongs in Illinois state court.

## CONCLUSION

For the reasons set forth above, and in Defendants' motion and initial memorandum in support, and for such other and further reasons as may appear to this Court, this Court should dismiss Plaintiffs' federal securities claims and related state court claims against Defendants and dismiss Plaintiff's federal Complaint in its entirety, and grant Defendants such other and further relief as this Court deems necessary and appropriate.

14

BERNARD RICE, MM SQUARED, LLC,<br>
SCHULTZ & CHEZ, JOSE LABOY,<br>
PAUL WELLMAN, NANCY STAFFORD,<br>
And SHELDON COHEN

By: _____
    One of Their Attorneys

Ruth A. Bahe-Jachna, ARDC No. 6200855
Ronald F. Labedz, ARDC No. 6256247
Paul J. Ferak, ARDC No. 6272208
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 2500
Chicago, Illinois 60601
(312) 456-8400

Dated: September 7, 2004

# CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that I caused a true and correct copy of **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND FOR ABSTENTION** to be served upon:

Lisa Bevilacqua
Bevilacqua & Rzepczynski, P.C.
33 N. Dearborn, Suite 1710
Chicago, IL 60602

Stephen Patrick Bedell
Scott C. Lascari
Gardner Carton & Douglas LLP
191 N. Wacker Drive
Suite 3700
Chicago, IL 60606

Thomas L. Browne
Peter E. Pederson, Jr.
Hinshaw & Culbertson
222 N. LaSalle Street, Suite 300
Chicago, IL 60601

by depositing a true and correct copy of the same in the United States Mail, postage paid, on this 7th day of September 2004.

_____
Ronald F. Labedz